King-Yessler Real Estate Company, Appellant, v. J. P. Messer, Appellee.

**APPEAL AND ERROR:** Review, Scope of—Trial De Novo—Accounting. An action against an alleged agent for an accounting, filed and tried on the equity side of the calendar, without objection, will be tried *de novo* on appeal.

**EVIDENCE:** Parol as Affecting Writing—Exceptions to Rule—Fraud. Under an allegation of fraud, parol evidence is admissible to show that a defendant, signing a contract of sale as the agent of the vendor, was in reality the agent of the vendee.

**PRINCIPAL AND AGENT:** The Relation—Evidence. The fact that, prior to the closing of a land sale contract, plaintiff had full knowledge that defendant claimed to have purchased the property *as his own*, and was so selling the same, is quite controlling on the claim that defendant was not acting as plaintiff's agent, even though, prior thereto, there had been talk to the effect that defendant would so act.

Deemer and Salinger, JJ., dissent as to the general result reached.

*Appeal from Cedar Rapids Superior Court.*—C. B. Robbins, Judge.

December 18, 1916.

Rehearing Denied January 15, 1918.

Action brought in equity for an accounting, and for damages against defendant as the alleged agent of plaintiff. Plaintiff corporation is the assignee of William King, W. E. Yessler, and W. A. Hubbard; the last named parties are the persons who, it is claimed, made the contract with

defendant. Hereafter, for convenience, we shall refer to the said three parties as plaintiff, instead of saying each time, plaintiff's assignors. The case was tried in equity, and, after a full trial, the petition was dismissed on the merits, and judgment rendered against plaintiff for costs. Plaintiff appeals.—*Affirmed.*

*Rickel & Dennis,* for appellant.

*Warren Harman* and *Grimm & Trewin,* for appellee.

PRESTON, C. J.—Plaintiff's claim is that its assignors employed defendant about March 17, 1913, to purchase for them certain particularly described property in Cedar Rapids, otherwise known as the Pullman House; that defendant agreed to get the property for them as cheap as he could, but assured them that it could not be bought for less than $45,000; that defendant falsely and fraudulently represented that the lease on the property had run out, and that the party occupying it was only a tenant at will, and further, that the $15,000 mortgage could be taken up at any time, without additional expense; that plaintiff informed defendant that they would not pay more than $45,000, and if that was the best he could do, they would take it at that price; that thereafter, defendant informed plaintiff that he had the deed, and could fix the matter up; that the deed ran to defendant, instead of plaintiff; that defendant informed them that he had taken the deed in his own name for convenience, and subsequently informed them that he had bought the property for himself, as a reason for taking the deed to himself; that defendant informed them that he had paid $45,000, whereas defendant paid but $42,000 to the owner. Plaintiff's claim is that the defendant was acting as their agent in the purchase of the property, and they ask an accounting, and for damages suffered, and for general equitable relief.

The answer admits that, after negotiations extending for several days prior .to March 17, 1913, the parties named purchased the property of defendant, which property, as they say, defendant had previously purchased from Mrs. Lillian Phillips, the owner thereof. It denies all allegations of fraud, and denies that defendant was acting as the agent of plaintiff, but says that he owned the property and sold the property to plaintiff as his own. It also alleges that all matters and claims set up in plaintiff's petition were known to the purchasers, King *et al.,* prior to and at the time they purchased the property, and were merged and settled in the final contract therefor; and that they well knew, before the consummation of the deal, that defendant had purchased and was the owner of the property. He alleges further that, at the time of the sale of the property by him to plaintiff, he did not know of the existence of the lease, and that afterwards, and before the sale was finally consummated, he paid plaintiff the sum of $900 in full settlement and discharge of all claims against him growing out of or connected with the said lease; that plaintiff was slow in raising the money with which to pay for said property; that they let the time pass for paying interest, and it became necessary to pay the holder of the mort-gage the sum of $150 for the purpose of securing the right to pay the same off after the time provided therefor; and that defendant paid plaintiff this sum in full settlement and discharge of .all claims growing out of or connected with the payment of said mortgage.

Mrs. Phillips, a resident of California, was the owner of the property, and one E. C. Barber was her duly accredited agent at Cedar Rapids, who testifies that he had not given defendant authority to sell the property, although there had been some talk between them in regard to defendant's finding a purchaser at a certain price.

The written contract between plaintiff and defendant, marked Exhibit 1, is as follows:

"This agreement made this 17th day of March, A. D. 1913 between J. P. Messer, agent for Lillian J. Phillips, through E. C. Barber, of the county of Linn and state of Iowa, party of the first part, and William A. Hubbard and W. E. Yessler & William King, of the county of Linn and state of Iowa, of the second part, as follows:

"The party of the first part hereby agrees to sell sub- ject to the approval of the owner to the party of the second part, on the performance of the agreements of the party of the second part, as hereinafter mentioned, all her right, title and interest in and to the real estate situated in the county of Linn and state of Iowa, to wit; Lot Seven (7) in Block Twenty-three (23) original town, now city, of Cedar Rapids, Iowa, for the sum of forty-five thousand ($45,000) dol- lars, payable as hereinafter mentioned. And the said party of the second part in consideration of the premises, hereby agrees to and with the party of the first part, to purchase all her right, title and interest in and to the real estate above described, for the sum of forty-five thousand ($45,000) dollars, and to pay said sum therefor to the party of the first part, her heirs or assigns, as follows: Five hundred dollars on the execution of this agreement, and the balance of forty-four thousand and five hundred dollars on receipt of warranty deed with abstract showing good title, a mort- gage of fifteen thousand dollars and interest is to remain on said property and the amount thereof is to be deducted from the purchase price and grantee is to assume said mort- gage. It is agreed said deed with abstract shall be ready on or before April 1st, if possible.

"J. P. MESSER, Agent.
"WM. KING.
"W. E. YESSLER per WM. KING.
"W. A. HUBBARD."

Defendant claims he was acting as special agent for the owner, Mrs. Phillips, in executing the contract, and the contract itself provides that it is subject to approval by the owner. Plaintiff claims that the contract was not all reduced to writing,—that is, that part in which they claim defendant agreed to act for them; and they testify that, when the writing was executed, they insisted that the rest of the agreement should be inserted, but defendant refused to do so; but plaintiff says that he again stated verbally that he would buy the property for them.

Thereafter, and on March 24, 1913, defendant claims to have purchased the property of the owner, through Barber, under the following contract or arrangement, executed in duplicate:

"Cedar Rapids, Iowa, March 24, 1913.

"Received of J. P. Messer two hundred ($200) dollars being part of the purchase money of Lot Seven (7) in Block Twenty-three (23) original town now city of Cedar Rapids, Iowa, the balance forty-one thousand eight hundred dollars, is to be paid on receipt of warranty deed with abstract showing good title. The mortgage now on the said property for fifteen thousand dollars, can remain and the amount of same be deducted from purchase money if grantor so elects, in which case grantee shall assume and agree to pay the same. The deed and an abstract of title shall be furnished to said Messer on or before the 15th day of April, 1913, and said balance of $41,800 then paid. In case of default of the payment of said balance, then said $200 shall be forfeited and purchase become annulled.

"Lillian J. Phillips,

"By E. C. Barber her Attorney."

Barber, who was a witness for plaintiff, testifies that he sold the property to the defendant. Defendant also testifies that he bought the property for himself, and the undisputed evidence is that plaintiff knew this before they closed

the transaction with defendant and obtained their deed from him, and knew that defendant had a deed, and knew that defendant was claiming that he was then selling plaintiff the property himself; and appellee claims that this, and other matters to be later referred to, constitute notice to the plaintiff that defendant was not acting as their agent, but was acting for himself alone.

The defendant obtained his deed under the arrangement last referred to, and later executed a deed to plaintiff, and the two deeds were placed with another party, as agent of all the parties, until plaintiff should pay the balance of the purchase price, less the mortgage assumed, and after deducting $1,050 allowed off the purchase price by defendant for the two items of $900 on the lease and $150 bonus in regard to the mortgage; and the deeds were later delivered and recorded. Later, plaintiff, or some of its assignors, appointed defendant their agent to sell the same property under the following contract:

"Contract for Sale or Exchange of Real Estate.

"We, William King and W. E. Yessler, of Linn County, Iowa, do hereby appoint J. P. Messer our agent to sell the following property, to wit: Lot Seven (7) in Block Twenty-three (23) original town now city of Cedar Rapids, Iowa (a consideration of [$150.00] is paid for this contract). It is also agreed that, in case this property is not sold before January 1st, 1914, and 1913 taxes shall be added to the selling price $60,000 for the sum of $60,000 to be paid as follows: cash. Said property is improved as follows: The Pullman House

"The said property to remain in their hands for sale or exchange for one year from date. In case said property is sold during the time mentioned we agree to pay J. P. Messer as commission all he may be able to get over sixty thousand net to us. Dated April 8th, 1913.

"W. E. Yessler,
"Wm. King."

The trial court, by its decree, found that plaintiff was the assignee of the parties as claimed; that, on March 17, 1913, plaintiff entered into the written contract with defendant heretofore set out, as the agent of the owner, through Barber, for the purchase of the property; that there was never any written contract of agency between plaintiff and defendant whereby defendant agreed to act as their agent in the matter of the purchase of said premises; but that, previous to the execution of said contract, there had been some conversation between defendant and said parties as to his obtaining the property for them; and that, from said conversation, the plaintiff had been led to believe that defendant would act as their agent in the transaction; but that the entering into said contract for the purchase of said property for the said sum of $45,000 was notice to the plaintiff that the defendant was acting as agent for the owner of the property at that time, and not as their agent; that, subsequent to the execution of said contract, and about March 24th, the defendant entered into a contract with the owner whereby he personally agreed to buy the premises; that, in the first negotiations for the purchase by plaintiff, defendant had informed them that the premises were then being held by the tenant as a tenant at will only, and that it developed thereafter that there was a lease upon the premises, between the owner, Mrs. Phillips, and another party, which would not expire until September 28, 1914, and that this fact was not discovered by plaintiff until subsequent to the execution of the contract to purchase said premises, made by them on March 17th; that, upon ascertaining said fact, complaint was made thereof to defendant, and that thereupon he informed plaintiff that he had purchased the property himself, and was then the owner of it, and that any money paid because of the existence of said lease would have to be paid by him. The court finds that this statement was an additional notice to plaintiff that defendant was not

acting as their agent in the purchase of said property; that, about the same time, it was discovered that a bonus of $150 would be required in order to pay off a certain mortgage upon the property, which plaintiff desired to retire, and that the defendant thereupon informed plaintiff that, if this sum was paid, it would have to be paid by him personally, and not by Mrs. Phillips, as he was then the owner of the property; and that this statement was additional notice to plaintiff that defendant was not acting as their agent in the transaction; that, about March 31, 1913, Mrs. Phillips executed a deed of the premises in question to defendant, and, about the 7th day of April, 1913, the defendant herein, together with his wife, executed a deed of the premises to King and Yessler, two of the original parties concerned in the transaction. The court further found that all the written documents produced in evidence negative the claim that defendant was acting as the agent of plaintiff in the transaction whereby the said parties purchased the premises, and that said documents, together with the statements of the defendant, as hereinbefore set forth, relative to the ownership of the property, were sufficient notice to the plaintiff that defendant was not acting as their agent, but that he was originally acting as the agent of Mrs. Phillips, and later on his own account; so that any profit he might make out of said transaction would not accrue to plaintiff. The court further found that, because of the foregoing matters, there was no fraud upon the part of defendant as regards plaintiff, and that, therefore, plaintiff is not entitled to recover from the defendant in this action.

1. The appellee claims that the case was improperly brought in equity, and that the cause is not triable *de novo* in this court, but that the findings of the trial court have, under the rule in a law action, the force of the verdict of a jury. But the case was filed in equity, and

1. APPEAL AND ERROR: review, scope of: trial *de novo*: accounting.

an accounting was asked, and the case was tried in equity
without objection. Defendant made no motion to transfer
the cause to the law calendar, which is the remedy provided
by statute. Without citing the authorities or the statute,
it is enough to say that the cause is triable *de novo* here.

2. It is contended by appellee, also,

2. EVIDENCE:
parol as affect-
ing writing:
exceptions to
rule: fraud.

that the written contract of March 17th
heretofore set out may not be varied by pa-
rol testimony. But appellants contend that
where, as here, fraud is charged, under the
doctrine of *Lavalleur v. Hahn,* 152 Iowa 649, and 167 Iowa
269, the evidence is admissible, under an exception in regard
to the parol evidence rule. We think the rule of those cases
applies to the present case, and, under the claim made by
plaintiff, that defendant was to act as their agent and to
purchase the property for them, defendant would not be per-
mitted, if plaintiffs have established their claim by the evi-
dence, to use the written contract alone, and thus accom-
plish a fraud upon the plaintiff. Of course, we are deter-
mining now only that the evidence is admissible under the
claim made, and then it is to be determined from the evi-
dence introduced whether plaintiff has established its claim.

3. The assignments of error relate to

3. PRINCIPAL
AND AGENT:
the relation:
evidence.

three main propositions: whether defendant
was the agent of appellant in the transac-
tion, and if so, whether he was guilty of any
fraud or misrepresentations, and what, if any, were the dam-
ages sustained by plaintiff by the fraud and misrepresenta-
tions, if established. This presents a question very largely
of fact. The weight of the testimony is that, prior to the
execution of the contract of March 17th, there was some
talk during negotiations that defendant should purchase
the property for plaintiff. The three assignors of plaintiff
so testify, and the defendant substantially admits it, al-
though in other parts of his testimony he denies it. It is

true, as contended by appellee, that neither the written con-
tract nor the alleged parol part of it provides for any com-
pensation to the defendant for his so acting for them, as
was the case in the *Lavalleur* case, supra. It is doubtless
true, as contended by appellant, that, even though this be
the fact, the law would imply a promise that plaintiff
should pay defendant a reasonable compensation if he did
act for them as their agent. We are inclined to the view
that, if this was all there was in the record, plaintiff would
have made a case. But the undisputed evidence is that,
before plaintiff had consummated the purchase of the prop-
erty, and when they could have protected themselves, and
before a deed was executed to them, and before they had
paid the purchase money, they had notice of and knew that
defendant had a deed from Mrs. Phillips, and was himself
claiming to be the owner of the property, and not their
agent; and they required defendant, as such owner, to pay
to them $900 on account of the lease, and $150 for the privi-
lege of paying off the mortgage; and this defendant did
make good to them by deducting it from the purchase price
paid by plaintiff to defendant. In other words, notwith-
standing the fact that there was talk between the parties
that defendant should, as agent, purchase the property for
plaintiff, they proceeded, with notice of all the facts, with
their eyes open, to close up the transaction, and deal with
defendant as the owner of the property. It is true that
plaintiff now claims it did not know that defendant paid only
$42,000 for the property he was selling to them at $45,000.
This could make no difference, unless defendant was acting
as agent for plaintiff when the transaction was closed. In
that case, of course, such a transaction would have been
fraudulent. Still, from the contract itself, and the other
circumstances which were brought to plaintiff's knowledge,
they could readily have learned that fact by inquiry of Bar-
ber, even though defendant requested Barber not to mention

the matter.  Plaintiff did not make any inquiry on this point.

The defendant claims that he did not know of a lease to run a year and a half longer on the property, when the contract between plaintiff and defendant was made, in March, 1913; but in this he is contradicted by Barber, who claims he told defendant of that fact in December previous.  Plaintiff's claim was that the rental of the property was worth $50 a month more than the lease provided for, and they required defendant to pay them this $50 a month for a year and a half, or $900.

Conceding that, as claimed by appellant, defendant did not deal fairly with Mrs. Phillips, the owner of the property, still we think plaintiff may not complain of that, because Mrs. Phillips is not complaining, and refused to join plaintiffs in their action when they offered her a percentage of any recovery that might be had.  They must show that defendant was acting for them.  And it may be that, as claimed by appellant, the conduct of defendant in selling them the property at $45,000, and then buying it of Mrs. Phillips for $42,000, was off color as a business transaction; still, as stated, the plaintiffs, with their eyes open, went on and closed the deal with defendant as owner of the property.  The defendant had the right to buy of the owner, Mrs. Phillips, though acting as her agent, if she had knowledge of all the facts and consented thereto.  The deposition of Mrs. Phillips and a large number of letters attached thereto, which were entirely omitted from appellant's abstract, show that the defendant did, in a lengthy letter, lay all the facts before Mrs. Phillips, stating the reasons why, in some respects, it was an advantageous sale, and that in other respects it might be to her advantage not to sell.

As stated, we think the case turns on the fact that plaintiff, with notice that defendant was acting for himself as owner of the property being purchased by plaintiff,

dealt with him as such owner; and the evidence on this point being without any substantial dispute, we deem it unnecessary to review the evidence on this point.

It should have been stated that defendant denies that he was acting as agent for plaintiff, and that he agreed to purchase the property for them at the lowest price he could, and in this he is corroborated by the written contract itself. Appellee contends that the talk on this subject before the contract was made was simply general trade talk, and in no way an agreement on the part of defendant to act as agent for them. The language of the written contract does not import an agency,—that is, that defendant was acting for plaintiff,—but does show on its face that defendant then claimed to be acting as agent for the owner of the property through Barber. There was no authority conferred upon defendant to purchase the property for plaintiff at any price. They reserved the authority themselves, and, as the evidence shows, they determined the different transactions, including the final consummation of the deal, and left nothing to defendant. The fact that appellant required defendant to deduct from the purchase price $1,050 shows, we think, that they were dealing with him as owner of the property, because they must have known that, if he had been their agent, and was not getting a commission or profit, he would not put up $1,050 in order to do the kindness for them which they said he wanted to do..

The case does not appeal to us in all ways, and yet we see no escape from the conclusion arrived at by the trial court. The judgment is, therefore,—*Affirmed*.

LADD, WEAVER, and EVANS, JJ., concur.

DEEMER and SALINGER, JJ., dissent.